CORTEZ ANDERSON          )
                                 )
v.                            )          NO. 2:05-CV-213
                                 )
HAMBLEN COUNTY, TENNESSEE,  )
*ET AL.*                       )

## <u>MEMORANDUM  OPINION AND ORDER</u>

The plaintiff's 42 U.S.C. § 1983 complaint[1] is before the Court on the

Defendant David Purkey's" Motion to Dismiss and/or for Summary Judgment," [Doc.

51],[2] and Defendants Hamblen County, Tennessee, Otto Purkey, Ron Inman, Scott

Purkey, James Coffrey,[3] and Jesse Dixon's Motion for Summary Judgment,  [Doc.

59].  Plaintiff has responded, [Doc. 63], oral argument was heard on January 16, 2008,

and supplemental pleadings have been filed by both parties, [Docs. 129, 130].  The

---

[1]The complaint also alleges several state causes of action; however, the defendant does not move for summary judgment on any of the state claims.

[2]Defendant David Purkey seeks dismissal under Federal Rule of Civil Procedure 12 "and/or for summary judgment" under Rule 56.  *See* Fed. R. Civ. P. 12 and 56.  Because the motion relies on information outside of the pleadings, it will be treated as a Motion for Summary Judgment.  *See id.*

[3]This defendant's name has been spelled various ways in the filings; thus, this Court will use the spelling set out in the complaint.

matter is now ripe for disposition.

I.  **FACTUAL  BACKGROUND**

Before setting forth the facts, this Court notes that paragraph 5(a) of the Scheduling Order states that any motion for summary judgment "must be accompanied by a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial."  The facts must be in separate numbered paragraphs with citations to the record.  Any party opposing must file a response to each fact either "(1) agreeing that the fact is undisputed, (2) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (3) demonstrating that the fact is disputed."  Each disputed fact must be supported by citation to the record.  The defendants initially failed to comply with the scheduling order.

On December 11, 2007, this Court issued a Show Cause Order giving the parties an opportunity to comply with the Scheduling Order.  On December 18, 2007, the defendants filed their Statements of Material Facts, [Docs. 120 and 121].  The Statement of Material Facts relating to Defendant David Purkey's Motion for Summary Judgment, [Doc. 120], stated:

> 1. The only time that David Purkey is mentioned in the Complaint is when the Plaintiff states: "Paragraph 4-Defendant, County Mayor, David Purkey 511 W. 2nd North St., Morristown, TN 37814, solely in his official

capacity and is available for service of process at 511 W. 2nd North St, Morristown, TN 37814." "Paragraph 71- Defendant Hamblen County, Tennessee is liable under the Governmental Tort Liability Act "GTLA" for the negligence of its employees and agents for actions, including but not limited to defendant, Scott Purkey, Sheriff Otto Purkey, Jailer Ron Inman, Mayor David Purkey, Corrections Officers James Coffrey and Jesse Dixon that are not specifically excluded from the act." *See* Complaint, Exhibit A to Doc. 1, paragraphs 4 & 71.

2. David Purkey is not even mentioned in the Plaintiff's Amended Complaint. *See* Amended Complaint, Doc. 27.

3. The Plaintiff was under the influence of alcohol at the time of his arrest. *See* Deposition of Cortez Anderson 21:9 – 13 (July 23, 2007)[Doc. 65].

4. The Plaintiff did not mention David Purkey in any of his responses when asked to name all the instances in which he felt like his civil rights had been violated. *See* Deposition of Cortez Anderson, Exhibit 1 to Doc. 59; *see also* Doc. 65.

5. Plaintiff has alleged no specific act of negligence, no specific intentional act, nothing to support any unconstitutional behavior, and in fact no act whatsoever that would subject the county mayor to liability in this case. *See* Complaint [Doc. 1], Amended Complaint [Doc. 27], and excerpts from Deposition of Cortez Anderson [Docs. 59, 65].

The Statement of Material Facts for the other defendants' Motion for

Summary Judgment, [Doc. 121], stated:

1. The Plaintiff was under the influence of alcohol at the time of his arrest. *See* Deposition of Cortez Anderson 21:9 – 13 (July 23, 2007)[Doc. 65].

2. The plaintiff acknowledges that Defendant Ron Inman was not on duty at any time when the alleged incidents happened. *See* Doc. 59-2, Deposition of Cortez Anderson 60:13-19 (July 23, 2007). *See also* Deposition of Ron Inman 62:19 –63:1 (July 25, 2007).

3. In the plaintiff's own words, "Officer Dixon did not play a part in doing anything to me whatsoever. He did not violate me in no matter whatsoever." *See* Doc. 59-2, Deposition of Cortez Anderson 47:18-21.

4. In the plaintiff's own words, he admits that Officer Coffrey took no part in any incident except for the alleged mace spraying incident. *See* Doc. 59-2, Deposition Anderson 50:4-6.

5. Defendant Otto Purkey was not present at any time material to the lawsuit now before the Court. *See* Deposition of Otto Purkey 3:18 – 4:5 (August 10, 2007).

6. The Plaintiff pled guilty to assaulting Officer Scott Purkey. *See* Defendants' Proposed Stipulations, paragraph 2 [Doc. 114] and Plaintiff's Response to Show Cause [Doc. 117]; *See also* Depo. Anderson 55:19 – 56:2.

The plaintiff responded by stating, "Plaintiff states that he has no objections to the documents filed," [Doc. 122].

Despite the fact that all three filings are grossly inadequate, viewing the facts in the light most favorable to the plaintiff,[4] this Court sets forth the following

---

[4]The defendants rely on *Scott v. Harris*, – U.S. – , 127 S. Ct. 1769, 1776 (2007), in arguing that this Court should not rely on the plaintiff's version of the facts for deciding this motion for summary judgment because the facts are "blatantly contradicted by the record." *See id.* However, in *Scott*, the events which were the subject of the action were caught on videotape, and it is not the situation in the instant case. Thus, *Scott* is distinguishable, and this Court will

facts, which it gleaned from the rather meager record filed in this case. The plaintiff was arrested on August 14, 2004, and charged with driving under the influence, and he was intoxicated when taken to the Hamblen County Detention Facility. During the course of his detention, Defendants David Purkey, Otto Purkey, and Inman were neither on duty nor present at the detention facility. Defendants Scott Purkey, Dixon, and Coffrey were present at the facility.

While being booked, the plaintiff engaged in a verbal exchange with Defendant Scott Purkey, and Defendant Scott Purkey attempted to choke the plaintiff.[5] Then the plaintiff was taken to a holding cell where Defendant Scott Purkey told him to remove his clothes down to his underwear and socks, and other inmates were removed from the cell. Defendant Scott Purkey returned sometime later with a pepper ball gun, fired three to four shots at the plaintiff, and left the holding cell. The plaintiff knocked on the holding cell door[6], and Defendant Scott Purkey returned to the cell, instructed the plaintiff to spread his arms and legs and to face a wall, and shot the plaintiff several times with the pepper ball gun. The plaintiff sustained a total of

---

view the facts in the light most favorable to the plaintiff.

[5] The affidavit of Jacqueline Arwood, filed by the plaintiff, makes no mention of this. Jacqueline Arwood was the booking officer for plaintiff.

[6] The affidavit of Jacqueline Arwood, plaintiff's witness, says that Anderson was "repeatedly kicking the door."

approximately 27 shots. After the shooting, the plaintiff fled the cell into the hallway, where all doors leading elsewhere were locked. Another officer then escorted the plaintiff back to the holding cell.[7] Throughout the night, someone poured cold water under the holding cell's door.

As a result of this incident, the plaintiff was charged with and pled guilty to assaulting Defendant Scott Purkey in the General Sessions Court of Hamblen County. The plaintiff attached the Incident Report to their Response. It states,

> [The plaintiff] struck officer in face [and] ran out of cell–in escape attempt. Was caught [and] refused orders to step and get down. [The plaintiff] refused officers['] orders and was combative–so pepper ball gun was used and took 15 rounds to gain compliance from [the plaintiff.] Most had no effect. [The plaintiff was] placed back in hold[ing] cell.

Moreover, the defendants have now filed[8] the judgment of conviction and the affidavit of complaint which stated the facts as follows:

> While in the H.C.S.O. Jail holding cell[, the plaintiff] hit Deputy Scott L. Purkey in the face/head and did run out of cell in the main jail hallway while attempting to escape. [The plaintiff] refused officers['] orders to stop and get down[] and was subdued with use of pepper ball gun and placed back into hold cell.

---

[7]The affidavit of Jacqueline Arwood states that Defendant Scott Purkey escorted the plaintiff back to the holding cell.

[8]At the January 16, 2008 motion hearing, this Court ruled that this document could be filed late after the plaintiff agreed to the filing in return for him being allowed to late-file an affidavit of Jacqueline Arwood.

Hours later, while still in the holding cell, the plaintiff asked Defendant Coffrey to return his clothing and to be let out of the cell because of the water that was placed under the door. Defendant Coffrey then sprayed the plaintiff with mace. The jail's videotape of the incident had been re-recorded, and no images were available. The Tennessee Bureau of Investigation investigated the entire incident, but nothing resulted from the investigation.

In addition, Defendant Inman was in charge of training officers in the use of the pepper ball gun. He used two videotapes that demonstrated the use of the gun and a training manual as part of his instruction. Defendant Inman trained Defendant Scott Purkey in the gun's use. During this class, Defendant Scott Purkey test-fired the gun and watched the training videos. At the time of this incident, a policy regarding the use of the pepper ball gun was not contained in the Policies and Procedures Manual for the Hamblen County Sheriff's Department.

Defendant David Purkey disposed of the plaintiff's initial complaint, as is his practice with many complaints he receives, taking no action. Defendant David Purkey also stated that he as mayor did not decide the contents of the Policies and Procedures Manual for the Hamblen County Sheriff's Department and that the manual was separate from the Hamblen County Government Policies and Procedures Manual.

Furthermore, two inmates and former Hamblen County Correctional

Officer Jacqueline Arwood alleged that other incidents of abuse occurred at the Hamblen County Detention Facility. Specifically, Brett Dubose claimed that while detained in a holding cell on September 24, 2004, officers shot him once in the stomach with a pepper ball gun and fired several shots over his head. Jodi Philpot alleged that he has been beaten several times while incarcerated at the Hamblen County Detention Facility, one of which resulted in his hospitalization at the University of Tennessee Medical Center. Finally, Ms. Arwood stated that it was common practice for prisoner's clothing to be removed due to noncompliance. She also observed officers spraying mace under the holding cell's door while inmates were present and a pregnant female inmate being punched by an officer. Ms. Arwood stated that officers would often stop recording the happenings in the holding cell and administer a "punishment," resuming the recording after the "punishment" was administered.[9]

Ms. Arwood stated that she observed Defendant Scott Purkey shooting into the holding cell with the pepper ball gun when the plaintiff was in custody. She saw the plaintiff run out of the holding cell's door and sit on a stool in the hallway. She further observed Defendant Scott Purkey "speaking calmly" with the plaintiff, and

---

[9] This allegation by Arwood is very troubling; however, she does not claim that is what happened on this occasion and there is no proof in the record to suggest that it did.

the plaintiff then returned to the holding cell "without incident." Ms. Arwood later observed wounds on the plaintiff's body as a result of the shots.

Ms. Arwood stated that several weeks later, a meeting was held concerning the plaintiff's incident, and Defendant Inman told Defendant Scott Purkey that "he did a good job in this incident" and that "if it had been up to him [the plaintiff] would have been [shot] more." She also stated that while she worked at the detention facility, no officer was ever investigated or punished for his or her treatment of an inmate.

## II. __STANDARD OF REVIEW__

Summary judgment is appropriate when "there is no genuine issue of material fact." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this

Court must construe the evidence in this record most favorably for the plaintiff because he is the litigant opposing summary judgment. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott v. Clay County*,

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>.

205 F.3d at 871 (emphasis added).

## III.    **DISCUSSION**

The complaint alleges that "Defendant Scott Purkey violated Plaintiff's rights under the Fourth Amendment . . . to be free from the use of excessive force; under the Fifth Amendment to [be] free from punishment without due process of law; and under the Fourteenth Amendment right to be free from cruel and unusual punishment." The plaintiff sued Defendants Inman, Scott Purkey, Coffrey, and Dixon in their individual and official capacities[10] and sued Defendants Mayor David Purkey and Sheriff Otto Purkey in their official capacities only. The plaintiff alleges that all

---

[10]The defendants' memorandum of law in support of the motion for summary judgment, [Doc. 60], addresses Sheriff Otto Purkey in terms of qualified immunity. However, the plaintiff did not sue this defendant in his individual capacity. *See* Notice of Removal [Doc. 1, Ex. A] and Amended Complaint [Doc. 27].

defendants are liable to plaintiff for damages as a result of the incident. This Court will first address the defendants' motion for summary judgment regarding Hamblen County, Tennessee, and all defendants in their official capacities,[11] and then this Court will address the individual capacity issues regarding Defendants Inman, Scott Purkey, Coffrey, and Dixon.

A.     **Hamblen County and Other Defendants in Their Official Capacities**

Defendants argue, in essence, that no policy regarding the use of force amounts to deliberate indifference on the part of the county. The plaintiff essentially argues that the county inadequately trained its officers and tolerated the alleged civil rights violations by its "inaction."

To establish liability under § 1983, a plaintiff must demonstrate that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) he was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.

---

[11]On August 6, 2007, Defendant David Purkey moved this Court to dismiss plaintiff's complaint regarding him because the complaint fails to accuse him of wrongdoing and because no evidence supports that he is liable to the plaintiff in any way. *See* [Doc. 51].

The plaintiff failed to respond to Defendant David Purkey's "Motion to Dismiss and/or For Summary Judgment" within the ten-day time limit, and no motion to extend the deadline was filed. The plaintiff's failure to respond, in and of itself, may serve as grounds for the granting of the Defendant David Purkey's motion. LR 7.2 of the Local Rules of the United States Court for the Eastern District of Tennessee. Nevertheless, the plaintiff did address this issue somewhat in his response to the other defendants' summary judgment motion; thus, the Court will address the merits of the Defendant David Purkey's motion.

1994) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1979)).  Suits against defendants in their official capacities as county employees are essentially suits against the county.  *See Fox v. Van Oosterum*, 176 F.3d 342, 347-48 (6th Cir. 1999) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978)); *see also Scott*, 205 F.3d at 879 n. 21.  It is firmly established that a municipality, or as in this case a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents.  *Monell*, 436 U.S. at 694.  To prevail, the plaintiff must show that the alleged federal rights violation occurred because of a municipal policy or custom.  *Id*.

In so doing, the plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003).

A plaintiff may look to four different avenues to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of

tolerance or acquiescence of federal rights violations. *Monell*, 436 U.S. at 694.

Inadequate training may serve as the basis for liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Cherrington*, 344 F.3d at 646.

Regarding the fourth avenue, the plaintiff argues that the county established an unwritten custom of tolerating civil rights violations through its "inaction." Under an inaction theory, a plaintiff must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on the part of the [defendants];
>
> (3) the [defendants'] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendants'] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508) (6th Cir. 1996)).

First, there is no genuine issue of material fact as to the inadequate training or supervision of the officers. The facts in the record indicate that Defendant

Inman was certified to train officers in the proper use of the pepper ball gun and that Defendant Scott Purkey had, in fact, been trained in its proper use. The plaintiff has failed to point to evidence in the record that might tend to establish a direct causal link between Defendant Scott Purkey's allegedly deficient training and a particular constitutional injury suffered by him. Furthermore, this Court will not engage in an open-ended inquiry whether a lack of proper training could have been the "moving force" behind an alleged violation of plaintiff's constitutional rights without the plaintiff pointing to specific evidence in the record. *See Cherrington*, 344 F.3d at 646.

In addition, to be actionable, the "training must be inadequate to the tasks that . . . officers must perform, this inadequacy must be the product of deliberate indifference, and this inadequacy must have been closely related to or have actually caused the plaintiff's injury." *Id*. In this case, assuming *arguendo* inadequacy in training, it does not amount to deliberate indifference.

Second, there is no genuine issue of material fact regarding plaintiff's claim that the county had an unwritten custom of tolerance for civil rights violations through inaction. Under this inaction theory, the plaintiff cannot show the existence of a clear and persistent pattern of illegal activity. The plaintiff did present evidence of three instances of alleged past abuse in the form of affidavits; however, these affidavits are not sufficiently detailed and do not amount to the existence of a "clear

and persistent pattern of illegal activity."

Also, the plaintiff cannot show that the defendants' alleged approval of Defendant Scott Purkey's actions are such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction. The only information contained in the record is that Defendant Inman held a meeting a few weeks after the incident and told Defendant Scott Purkey that he "did a good job." The plaintiff argues that Scott Purkey was never disciplined; however, he fails to attach any evidence from the record to this effect. Even if such evidence were in the record, this still does not sufficiently amount to deliberate indifference in their failure to act to amount to an official policy of inaction. Furthermore, the plaintiff cannot show that any such custom of inaction was the moving force in the plaintiff's alleged constitutional violation.

For the reasons stated above, this Court FINDS that summary judgment is proper in regards to Hamblen County and all defendants in their official capacities.

B.    *Heck v. Humphrey* **Rule**

The defendants "rely on the doctrine of issue preclusion, or res judicata" in claiming plaintiff's suit is barred because he pled guilty to assaulting Defendant Scott Purkey. The *Heck* rule is the appropriate rule to apply in this case. "*Heck* bars § 1983 plaintiffs from advancing claims that, if successful, 'would necessarily imply

the invalidity' of a prior conviction." *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487(1994)). However, if the plaintiff's actions would not imply invalidity of an outstanding criminal judgment, then the action would not be barred. *See id*.

The Sixth Circuit applied the *Heck* rule in *Cummings v. City of Akron*. *See id*. at 682-84. In *Cummings*, the plaintiff was convicted in state court of two felony counts of assaulting a police officer. *Id*. at 680. The plaintiff brought a § 1983 action claiming excessive force arising out of the same incident for which he was convicted. *Id*. at 679. The Sixth Circuit upheld the district court's dismissal of the plaintiff's excessive force claims under *Heck*, stating:

> The struggle between [the plaintiff] and the officers gave rise to both [the plaintiff's] assault conviction and the excessive force claim, and the two are inextricably intertwined. Additionally, [the plaintiff] could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge. Thus, we hold that *Heck* bars [the plaintiff's] excessive force claim from moving forward, and we affirm the district court's grant of summary judgment . . . on this claim.

*Id*. 682-83.

Here, as in *Cummings*, the struggle between the plaintiff and Defendant Scott Purkey gave rise to both the plaintiff's assault conviction and his constitutional claims. The conviction and the excessive force claim, the due process claim, and the

Fourteenth Amendment claim are "inextricably intertwined." In addition, the plaintiff could have likewise raised his excessive force claim in defense to his assaulting Defendant Scott Purkey; however, he chose not to do so. Thus, this Court FINDS that plaintiff's claims against Defendant Scott Purkey in his individual capacity are barred by the *Heck* rule.

## C.    **Qualified Immunity - Individual Capacity**

The defendants submit that they are entitled to qualified immunity from the plaintiff's claims.

> In determining an officer's entitlement to qualified immunity [this Court] follow[s] a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First taken in the light most favorable to the plaintiff, [the Court] decide[s] whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, [the Court] next ask[s] whether the right was clearly established. *Id.*

*Vakilian v. Shaw*, 335 F. 3d 509, 516-17 (6th Cir. 2003). In general, government officials performing discretionary functions, are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are

protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The relevant question for the Court regarding whether the right was clearly established is not the subjective intent of the defendant, but whether a reasonable officer would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640.

1. Supervisory Liability

First, Defendants Inman, Dixon, Coffrey, and Otto Purkey claim that they are entitled to qualified immunity in that as supervisors, they did not personally violate the plaintiff's constitutional rights. Liability under § 1983 cannot be based on the doctrine of *respondeat superior. See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, the plaintiff must show that the defendants personally violated his rights. For supervisory liability to attach, the defendants must be shown to have encouraged the violation of the plaintiff's rights "or in some other way directly participated in it." *Id.* (internal quotation marks omitted). "At a minimum," the defendants must have "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (internal quotation marks omitted).

Stated differently, supervisory liability will attach if the defendants possessed information revealing a "strong likelihood" of unconstitutional conduct by

subordinate officers but did nothing to prevent the misconduct, thereby causing harm to the plaintiff. *See Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir.2002), *cert. denied*, 537 U.S. 1232 (2003); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 513 (6th Cir.1996). In such circumstances, the defendants are said to have exhibited "deliberate indifference" to violations of the plaintiff's constitutional rights.

a. **Jesse Dixon and James Coffrey**

Defendants Dixon and Coffrey both argue that they are entitled to qualified immunity under the theory of supervisory liability. However, they have presented no facts that show that they are supervisors in any manner. Thus, the theory does not apply to them.

Nevertheless, regarding Defendant Dixon, the plaintiff stated in his deposition that "Officer Dixon did not play a part in doing anything to me whatsoever. He did not violate me in no matter whatsoever." Moreover, at the January 16, 2008 motion for summary judgment hearing, both the plaintiff and the defendant agreed that Defendant Dixon should be dismissed. Thus, it is hereby **ORDERED** that plaintiff's complaint regarding Defendant Dixon is **DISMISSED**.

Defendant Coffrey does not move for summary judgment regarding the mace-spraying allegation. Thus, he will remain in the suit in his individual capacity only.

### b. **Ron Inman**

Defendant Inman was not present at the detention facility during this incident. Thus, he did not directly participate in the conduct. Also, there is no evidence in the record that he "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee*, 199 F.3d 295 at 300. The facts alleged do not show that Defendant Inman's conduct violated a constitutional right of the plaintiff. Therefore, this Court FINDS that summary judgment is appropriate as to Defendant Inman because of qualified immunity.

### c. **Otto Purkey**

First, the plaintiff did not sue Defendant Otto Purkey in his individual capacity; however, Defendant Otto Purkey does move for summary judgment under a supervisory liability theory. This Court FINDS that even if the plaintiff had sued Defendant Otto Purkey in his individual capacity, summary judgment is appropriate as to Defendant Otto Purkey because of qualified immunity for the same reasons set forth above regarding Defendant Inman.

## IV. CONCLUSION

Accordingly, summary judgment is **GRANTED** in regards to all defendants in their official capacities and to every individual-capacity defendant

except Defendant Coffrey; it is, therefore **DENIED** as to Defendant Coffrey in his individual capacitiy. More specifically, summary judgment is **GRANTED** as to Sheriff Otto Purkey and Mayor David Purkey in their official capacities,[12] and the plaintiff's § 1983 claims against these defendants are hereby **DISMISSED WITH PREJUDICE**. Summary judgment as to Jailer Ron Inman, Shift Leader Scott Purkey, and Corrections Officer Jesse Dixon in their individual and official capacities is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**. Summary judgment as to Corrections Officer James Coffrey in his official capacity is **GRANTED**, and accordingly, that claim is **DISMISSED WITH PREJUDICE**. Further, the Court will decline to exercise supplemental jurisdiction over the plaintiff's state law claims because the majority of the claims are exclusively against dismissed defendants, and the three that involve the remaining defendant also involve all of the dismissed defendants. Therefore, the plaintiff's complaint on all state law counts will be **DISMISSED WITHOUT PREJUDICE**. 28 U.S.C. § 1367(c)(3) (2008). Thus, the remaining claim in this Court is the individual capacity claim against Corrections Officer James Coffrey for the alleged mace-spraying incident.

Pursuant to LR16.4 of the Local Rules of the United States District Court for the Eastern District of Tennessee, it is hereby **ORDERED** that this case

---

[12]Again, these defendants were not sued in their individual capacities.

proceed to mediation on this remaining claim within the next sixty (60) days. The parties shall report on the results of mediation on or before April 25, 2008. If mediation has been unsuccessful, this case will be reassigned for trial at that time.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE